## Adam Clarke Tietz *v.* Philadelphia Traction Co., Appellant.

*Negligence—Inadequate charge of court.*

The Supreme Court will reverse a judgment in favor of the plaintiff in an action of trespass for personal injuries, where the charge of the trial judge contains no clear statement of the questions involved, and no adequate presentation of any of them; and the inadequacy of the charge is such as to be in its effect upon the jury misleading, and in its effect upon the defense unfair.

Argued April 11, 1895. Appeal, No. 180, Jan. T., 1895, by defendant, from judgment of C. P. No. 3, Phila. Co., Dec. T., 1892, No. 903, on verdict for plaintiff. Before GREEN, WILLIAMS, McCOLLUM, DEAN and FELL, JJ. Reversed.

Trespass for personal injuries.

The facts appear by the opinion of the Supreme Court.

The court charged as follows:

" You have had a long and fatiguing experience in this case, and I think we are all tired, jury and court, and counsel, and all, but when you retire into your room you will then have whatever time you may think proper to discuss this matter, and there will be no hurry and no reason why you should not do the fullest possible justice to everybody's right in this case. You are the sworn custodians of the rights of both plaintiff and defendant. There is no short and easy and quick way of disposing of the rights of this or any other case. You cannot adopt a precedent or a sentiment or any view which is not based upon the law and based upon the evidence in this case. That is your first duty, and you must disregard every

other consideration than that. Your effort must be to find out the truth of the case, and then apply it in a verdict.

"There is a large number of undisputed facts in this case, and I have not the time to go through all of them. I think you will readily recall them, but I can give you some notion as to them. In the first place, the condition of this plaintiff's health is practically conceded all around. He is suffering from the disease which the doctor described as myelitis, which is inflammation of the marrow of the backbone, and the consequences of which you have heard. The only question, so far as the liability of the defendant is concerned, is as to what was the cause of his complaint. That there was negligence in the management of the particular trolley car on that particular day is also unquestioned. The question is what were the consequences which followed from that negligence. There is no contributory negligence on the part of this plaintiff, so that that question does not embarrass you in this case. What we want to ascertain is how far did the defendant injure the plaintiff, because you have no right to take A's money with which to meet B's liabilities. If this man himself was the unhappy cause of his own misfortune when he slipped from that roof, this defendant can of course have nothing to do with it; on the other hand, in order to place the liability on the defendant, you must find that the negligence of which it was guilty did produce the injuries claimed by this plaintiff, which, without that negligence, he would not have suffered from.

"The question in this case arises from the fact that there were two accidents. The first was a fall from the dye house on the 25th of August, in which this man broke his leg and in which it is claimed by the defendant he also injured his back. The plaintiff asserts that his back was not hurt, and that whatever suffering he is now undergoing did not spring in any way from the fall from the dye house. The defendant, on the contrary, says that that was the cause of his present condition. The evidence is that the hospital records show there was a bruise on his back, as well as a bruise on his right ankle, as well as a severe breaking of the two bones of the lower leg and of the hammer-like end of the ankle joint. It is also in evidence that on one particular occasion, some days after he was received in the hospital, he complained of numbness in his back and legs,

and the opinion of the attendant physician, as recorded by himself on that day, was that there had been spinal concussion, which was the cause of these sensations. Spinal concussion if severe enough, it is admitted, might have caused the condition in which this plaintiff is to-day. The plaintiff argues that that passed away; that it was not a permanent condition; that he got so much better that the doctor never recorded any further symptoms on the subject of spinal concussion and never treated him for the effects of spinal concussion; that when he left the hospital he was in a perfectly good condition, except that one leg was a little shorter than the other. In addition to that, the plaintiff produces testimony to show that his condition of health was good from the time he left the hospital until he was on the trolley car on the 30th of December; that he was able to perform the sexual act, and his natural operations such as passing urine and dung were proper; that after this accident they ceased to be.

" The plaintiff's experts, in addition, I may say, ascribed his trouble to the second accident and considered of lesser moment the symptoms of numbness and so on which the doctor described as a concussion. The plaintiff said that his back struck against the dasher, and that caused a bruise on this particular place where he now has the trouble. There was no evidence as to where the bruise was on his back at the time he was brought into the hospital. It may have been at that spot or at any spot. There is no evidence on that point.

" The defendant's experts say that it is not reasonable to suppose that this trouble is owing to the second accident; that it is owing to the first, and the principal reason on which they based this is the fact that he retained his urine so long, his being unable to make water except through a catheter from twenty to twenty-seven days, and that that was an indication of spinal concussion, or some injury to the spine, and that that is the probable cause of the condition he is in. The defendant's experts state that his condition might be owing to both accidents, giving a certain view of the evidence in the case.

" [Then the question comes up, how far the defendant would be liable supposing his spine was originally injured, and supposing the retention of urine passed away and was not followed by incontinence of urine, and supposing he was getting better

of the concussion of the spine, if the second accident, even though it did not cause the present symptoms, revived a disease which was at that time a hidden condition in his body, and which might or might not have developed without the accident. If that first accident did not affect the spine, if all the consequences to his spine were what followed from the second accident, it is clear what the cause was. If, on the other hand, the first accident laid the foundation for it, and he was getting better, and the second accident revived the disease which perhaps afterwards would not have been revived, then you can ascribe the condition to the second accident.] [3]

" [The defendant also produced evidence that there was no violent shock in that car. The fact that the plaintiff's two legs were not of the same length may account perhaps for the fact that he was thrown more readily than the others, and perhaps he did not brace himself. Nobody else on that car seems to have been thrown off their feet. The motorman says that the car slid into the other, and while it pushed the lighter car off the track, it did not cause the jar which would be inferred from the plaintiff being first thrown forward and then backward, but it may be that what would not have affected a man in sound health did affect him.] [4] Of course, men in a weak condition of health have rights the same as those in a strong condition of health. You will make up your mind as to how far the plaintiff's injuries can be traced to the defendant.

" [As to the question of damages, if you find for the plaintiff; then he has had pain and suffering, he has had a permanent condition of ill health, a loss of many of the delights of life, and certainly has been suffering from most uncomfortable symptoms. In addition to that, there has been a great loss of earning power. You have not the right to capitalize his earning power at a sum which would yield the amount he would have earned, if invested, say at six per cent during his life, for when he dies, no matter what his earning power would have been, it would have come to an end. You must fix a sum which would fairly compensate him for the annual income which would have accrued to him as long as he lived. He is living on something which, in the nature of things, must end some time. Therefore, you cannot give him a sum which, if placed at interest, would bring him in what he would earn

yearly. The other elements of pain and suffering in the past and pain and suffering in the future, are matters which you can take into consideration in addition to the loss of earning power.

" If you find for the plaintiff, you will find your damages on the basis I have given. If you find for the defendant, of course, no question of damages arises.]" [2]

Verdict and judgment for plaintiff for $26,960. Defendant appealed.

*Errors assigned* were (1) that the charge as a whole was not a fair and adequate presentation of the case ; especially in that it failed to refer to the contradiction by defendant's witnesses to plaintiff's evidence as to the trolley occurrence and the fall from the mill, but stated the evidence of the plaintiff upon these points as though uncontradicted ; (2–4) above instructions, quoting them.

*Thomas Leaming* and *John G. Johnson,* for appellant, cited : Reichenbach v. Ruddach, 127 Pa. 564 ; Herstine & Lehigh, etc., R. R., 151 Pa. 244 ; Penna. Canal Co. v. Harris, 101 Pa. 80 ; Dooner v. D. & H. Canal Co., 164 Pa. 17 ; Burke v. Maxwell, 81 Pa. 139.

*A. S. L. Shields,* for appellee, cited :—Herstine v. Lehigh Valley R. R., 151 Pa. 244 ; Yerkes v. Wilson, 81 Pa. 9 ; Penn. Mut. Ins. Co. v. Snyder, 3 W. N. C. 269.

OPINION BY MR. JUSTICE WILLIAMS, July 18, 1895 :

This case is in some respects a remarkable one. The plaintiff is a journeyman tinner who worked at roofing and cornice work. He earned when at work two dollars and a half per day or fifteen dollars per week. In August, 1892, while at work upon the roof of a two story building he fell to the ground, striking upon the brick pavement in the back yard of an adjoining property. When his fellow workmen reached him he was lying where he struck and was unable to move or speak. He was carried from the yard on a litter and taken to a hospital. Here it was found that both bones of one leg were broken and the bones about the ankle joint. He was also bruised about the

head and body. When able to speak he complained of numbness or loss of sensation in the injured leg and in the back. He was also afflicted for some weeks with retention of urine, and the regular use of a catheter became necessary. At the end of forty days he was able to move about with the aid of two crutches and was discharged from the hospital in this condition. He continued to improve slowly for some three months and was able to lay aside his crutches. At this time, and before he had resumed work of any sort he became a passenger on one of the defendant's street cars, and while upon the car a collision occurred. The jar occasioned by it did not jostle any other passenger from his position, but the plaintiff who was standing on the rear platform was thrown forward against the glass window in front of him and the skin was broken along the ridge of his nose by contact with the glass. No other injury was visible, or was complained of at the time. The plaintiff left the car and walked back to his home a distance of half a mile or more. From the time of this accident he says he was confined to his bed for three weeks, when he began to improve, and thereafter continued to gain slowly until he began work as a canvassing agent for a laundry, going about with a horse and wagon collecting articles, taking them to the laundry, and returning them again to their owners. This business he was still engaged in at the time of the trial. He alleged however that he was disabled for work at his trade because of a severe injury to his spine resulting from the jar suffered while on the street car, and that his earning power was largely and permanently impaired thereby. The defendant did not deny that the plaintiff's spine was in a diseased condition, but alleged that it was due to the injury received at the time of his fall, which was an adequate cause to account for it and which, it was argued, did in fact produce the condition from which the plaintiff was suffering. It was further contended, that the jar resulting from the collision was not an adequate cause, inasmuch as it was not severe enough to jostle any other person from his position in the car whether such person was seated or standing. It is very plain therefore that the great question of fact for the jury was whether the spinal disease from which the plaintiff was suffering at the trial was occasioned by his fall from the roof of a two story building to a brick pavement below, or by the jolt

received while on the street car of the defendant company. If it was found to be the result of the fall there was the further question as to what injury had been suffered as the result of the jolt by the cutting of the face, or other consequence of the plaintiff's loss of his equilibrium.

The first assignment of error complains that the charge of the learned judge did not properly submit these questions, but that in its treatment of them it was inadequate and unfair. We do not understand that partiality or intentional unfairness is charged, but that the inadequacy of the charge was such as to work unfairness to the defendant. Turning to the charge we find that the learned judge begins by saying " I think we are all tired, jury and court, and counsel, and all." Continuing, he said, " I have not the time to go through all of " the facts that should be considered, but added, " I can give you some notion of them." He then directed the attention of the jury to the diseased condition of the plaintiff, stated that the negligence of the defendant in the management of the car was " unquestioned," and told them there was no contributory negligence on the part of the plaintiff. He then stated the question to be " how far did the defendant injure the plaintiff? " To guide them in determining this question he referred briefly to the medical testimony relating to the character of the plaintiff's disease and its probable cause, and told them that from this testimony the question was raised " how far the defendant would be liable," on the supposition that certain facts should be found by the jury. These are referred to in the third specification of error. They are these: "Supposing his spine was originally injured (by the fall), and supposing the retention of the urine passed away and was not followed by incontinence of urine, and supposing he was getting better of the concussion of the spine (occasioned by the fall), if the second accident (the jolt on the car), even though it did not cause the present symptoms, revived a disease . . . . which might or might not have developed without the accident" (the jolt). If these supposed facts were found they were told they might hold the defendant liable for the results of a disease it did not cause and which might have assumed the same proportions if the accident on the car had never happened. But we will use the words of the charge upon this point. They are, " If on the other hand the first acci-

dent laid the foundations for it" (plaintiff's present condition) "and he was getting better, and the second accident revived the disease which perhaps afterwards would not have been revived" (and, perhaps would have been) "then you can ascribe the condition to the second accident." The learned judge then referred to the position taken by the defendant that the accident on the car was not violent enough to produce any serious injury and dealt summarily with it in this fashion: "It may be," said he, that what would not have affected a man in sound health did affect him. Of course men in a weak condition of health have rights the same as those in a sound condition of health." With this remark this line of defense was dismissed from consideration. What had been in fact submitted to the jury except the amount of the damages it would be difficult to see. In the language of the assignment of error this charge was inadequate; so inadequate as to be in its effect upon the jury misleading, and in its effect upon the defense unfair. The result was a verdict of little less than twenty-seven thousand dollars. The learned judge had said to the jury upon the subject of damages "You have no right to capitalize his earning power at a sum which would yield the amount he would have earned, say at six per cent during his life, for when he dies, no matter what his earning power would have been, it would have come to an end." If the loss in earning power be what the plaintiff claims, thirteen dollars per week, and no allowance be made for vacations, sickness or want of work, but every day in the year be counted, his total loss of earning power might be six hundred and seventy-six dollars per year. The amount of the verdict put at interest at six per cent would yield an income of sixteen hundred and twenty dollars per year. The jury did just what the learned judge told them they must not do. They capitalized the plaintiff's loss of earning power. They emphasized their disregard of the instructions of the court by nearly trebling the sum so arrived at. The verdict should have been promptly set aside for this reason alone. When a motion was made to set it aside the learned judge for some reason that we cannot discover refused it, and entered judgment on the verdict without abatement or modification. This is not assignable for error, but in view of the explicit direction to the jury as to their duty in the premises, it deserves mention as one of the notice-

able things upon this record. We should have been gratified, and perhaps helped in the disposition of this case, if the learned judge had placed his reasons for sustaining a verdict, rendered in flat violation of his instructions, in some substantial form on the record. But we sustain the first assignment of error. The charge was inadequate. It contained no clear statement of the questions involved and no adequate presentation of either of them. The second, third and fourth assignments are also sustained and for the same reason. The treatment of the subjects referred to therein is wanting in clearness and fullness.

The length of the trial and the fatigue incident to it are no doubt responsible for the haste and inadequacy of the charge, but they cannot remove the well grounded objections urged against it in this court. It is the fact of inadequacy from which the defendant suffers, and of which we are bound to take notice.

The judgment is reversed and a venire facias de novo is awarded.

DEAN, J., dissents from reasons, but concurs in judgment.

CONCURRING OPINION BY MR. JUSTICE DEAN :

I concur in the judgment in this case but do not concur in the reasons therefor. They do not, in my opinion, keep sufficiently in view the character of the evidence adduced on both sides at the trial, but strike me as resting, in the main, on what is assumed by this court to be an excessive verdict.

The function of determining the truth from contradictory evidence, in this commonwealth is confided to the jury. As long as our constitution declares that trial by jury shall remain as heretofore, the stability and permanency of our judicial system will be best served, if all those concerned in its administration keep strictly within the lines laid down by the fundamental law.

Here, it was in effect conceded that plaintiff at time of trial was a physical wreck beyond hope of repair. It was also conceded, that about five months before the car accident he had fallen from a building and sustained very serious injury ; further, it was scarcely denied that at this time he had apparently, in good degree, recovered from the effects of the first injury and was again earning a livelihood.

At the trial, plaintiff had offered evidence tending to show: 1. Negligence on part of defendant resulting in personal injury. 2. That recovery from his first injury had been arrested thereby, and permanent disability induced.

The trial was long and the contradictory testimony abundant. The questions from it for the jury to answer were: Had defendant by negligence injured plaintiff? If so, to what extent? Was the first injury permanent or only temporary, and he on the road to recovery at the time of the second one? If even his first injury was permanent, was it aggravated by the second? If not permanent, had it been made so by the second? The conflicting evidence bore on all these questions. The importance of the case suggested a full and clear exposition of the law applicable to it; it was the manifest duty of the judge to give it, and no weariness brought on by a long and vexatious trial, or aversion to the drudging labor necessary to the elimination of confusing and irrelevant details, from that which bore directly on the important issue, could absolve him from this duty. This was not performed, and in this sense the charge was inadequate. It was not such a charge as, in a case of this gravity, both parties had the right, not only to expect, but to demand. Therefore, there was error, not in commission, for there is nothing fairly objectionable in what was said, but in omission. I will not undertake to say the jury erred in their verdict, for I do not know. I have no more right to tell them what was the truth from this testimony, than they have to tell me what is the law applicable to it. I do know, however, they did not have from the court that full and clear statement of the law applicable to the evidence which should precede intelligent deliberation and correct conclusion. A jury of the very best informed laymen are entitled to this much aid from the court. These, very briefly, are my reasons for sending the case back for retrial; not because the jury certainly erred, but because they had not all the light they ought to have had from him whose duty it was to carry the lantern, and therefore, being left in the dark, they may have stumbled.