## Alexander R. Todd *v.* The Second Avenue Traction Company, operating the North Side Traction Company, Appellant.

*Negligence—Street railways—Railroad—Burden of proof—Evidence.*

Where an electric street railway car breaks through a safety gate and collides with a passenger train, thereby injuring a passenger on the train, the burden of proof is upon the person injured to show that the street railway company was negligent.

*Negligence—Damages—Charge of the court.*

In a negligence case it is reversible error for the court to neglect, in its charge, to instruct the jury as to the rules of law applicable to such items of damage as loss of earning power, pain and suffering, and expenses incurred as a consequence of the accident.

Argued Nov. 9, 1898.    Appeal, No. 163, Oct. T., 1898, by defendant, from judgment of C. P. No. 3, Allegheny Co., on verdict for plaintiff.    Before GREEN, McCOLLUM, MITCHELL, DEAN and FELL, JJ.    Reversed.

Trespass for personal injuries.    Before KENNEDY, P. J.

The facts appear by the opinion of the Supreme Court and by the following charge of the court below:

The action which you have been sworn to try is for the recovery of damages for injuries which the plaintiff claims to have received in an accident, which accident he also claims occurred through the negligence of the defendant.    The defendant is a street car company, operating a line of cars, by means of electricity, between this city and Troy Hill, on the other side of the Allegheny river, part of its route extending through Allegheny city. On the morning of April 8, 1897, a car belonging to the defendant was coming to this city from Troy Hill.    It was discovered by the employees upon the car, as they supposed, that some of the machinery of the controller upon the front part of the car was out of order, and they so reported to the dispatcher of the company, who boarded the car as it came down Sandusky street, Allegheny city.    On its way down the street Mr. Callahan, the dispatcher, endeavored to discover what was wrong with this controller, and investigated it as far as he could, as he says, and tested it in order to find out the trouble.    The car approached the railroad crossing on Sandusky street, the railroad crossing of the Pittsburg, Ft. Wayne & Chicago Railroad, and of the West Penn Railroad Company.    As it approached this crossing a train belonging to the Pittsburg, Ft. Wayne & Chicago Railroad Company was passing on its way west, crossing Sandusky street, and the safety gates were down.    This car then stopped within some twenty-five or thirty feet of the railroad crossing, and while it was so stopped, Mr. Callahan, as he says, continued his efforts to find out what was wrong with the controller. After doing so, according to the testimony on behalf of the plaintiff, he said to the motorman that this controller was all right, and, as is further stated, he told the motorman to turn on the power—at all events, the power came on about that time, and the car started suddenly and rapidly forward, breaking

through the safety gate and striking violently the side of the last car belonging to the train, which was a baggage car. Standing in that car was Mr. Todd, the plaintiff in this action. The force of the blow or collision, as Mr. Todd claims and tells you, caused the car in which he was to topple, or careen, I think he called it, caused it to almost topple over, and it rocked back and forth before finally righting itself on the track. He claims also that when the collision occurred, and the car was thrown over in this way, he was thrown backward upon a steam heater, or radiator, or stove, or something in the car, receiving an injury, sustaining a fracture of two of his ribs, and causing an injury to his spine, which has resulted, as he claims, in a permanent disability. He claims that this accident, and the resulting injuries to himself, were caused through the negligence of the defendant company, and he asks compensation in damages by a verdict at your hands. Mr. Todd explains to you that he did not consider the injury at the time at all serious and he continued on his journey. He was, as you will recollect, a brakeman on the Pittsburg, Ft. Wayne & Chicago Railroad, his run being between this city and Crestline, in the state of Ohio. He continued his trip on this day in question, not supposing at the time that he was seriously hurt. But he tells you after he had gone some distance he became sick, and he describes to you the balance of his trip to Crestline. He tells you how he was cared for by being provided with some kind of bed in the mail car, on the empty mail bags, where he rested as well as he could until he reached Crestline. He tells you of his sufferings on the way, and of the medical attendance that he received at Crestline, and that he staid there until Saturday of that week. The accident occurred on a Thursday morning, and on the Saturday following he returned to his home in Sewickley, and he tells you of his sufferings on the way here, and afterwards of the attention, medical and otherwise, that he received after reaching his home, and since that time. All this has been described and it is not necessary for me to go into the testimony in detail. As I have said, he claims to have been permanently disabled by the accident, and he asks compensation by a verdict at your hands. He has shown by the testimony that he has been unable to work since the occurrence of the accident, except on one trial trip that he took over his old route, which resulted disastrously to

him, and he was laid up and was worse afterwards, and that he has been unable to work since that time. According to the testimony of the physicians he is likely to be unable to work in the future. If he is entitled to a verdict at all in this action, he is entitled to compensation for the cash expenditures incurred by him, resulting from the accident, such as doctors' bills, medicines and extra expenses of nursing. And he is entitled further to compensation for loss of wages, for loss in his earning capacity, which he has already sustained up to the present time, and also the loss, if any, likely to occur in the future. In addition to these two items I have mentioned, he is entitled to what you consider a reasonable and proper allowance for the pain and suffering which he has already endured, and is likely to endure, if any, in the future. Those are the elements which go to make up what is known as the measure of damages to which Mr. Todd, the plaintiff, is entitled, if you find that the accident occurred through the negligence of the defendant company.

Now, the defense urged upon your consideration is, first, the improbability that this passenger railway car, so much smaller than the railroad coach, and such a difference in weight, should, by striking the railroad car, have caused it to topple over, as claimed by the plaintiff; and they urge on you also the improbability, even if it did, that this serious trouble—it is admitted that the plaintiff is suffering from serious trouble or disease of some kind—was caused even if the car was thrown over as claimed, that this produced this serious injury to the plaintiff. They further claim and urge most seriously upon you, that the defendant company, under the circumstances, was not guilty of any negligence, even if this passenger car did strike the railroad car and cause the accident and the injuries to the plaintiff, that still the accident was unavoidable upon the part of the defendant; that it could not have been foreseen and guarded against. These, gentlemen, are matters for your serious consideration. If you should find that the accident did occur through the negligence of the defendant company then the plaintiff is entitled to your verdict. But, as I have stated, the defense claims that the accident was unavoidable, that it could not have been foreseen and guarded against by it or its employees. The plaintiff claims that this controller was out of

order, as reported by the employees of the company, and that if Mr. Callahan, the dispatcher, had taken proper pains, or had adopted any reasonable and proper methods for ascertaining its condition, whether or not it was really out of order, that he could readily have discovered the trouble, and the accident would not have occurred. And they say that he, through his incompetence and failure to make the proper investigation, and reporting to the motorman that the controller and car were all right, instructing the motorman to turn on the power, the accident occurred. This they claim to be negligence on the part of the defendant company, rendering it liable in this action.

Now, the defendant company is not bound to furnish the most improved machinery that the most scientific minds, or men of the highest degree of skill, engaged in the business, could suggest, but they are bound to furnish the reasonably best and safest machinery and appliances, and cars, in ordinary use by persons engaged in the business, and versed in the business, and known as such by those having skilled knowledge of such machinery and cars and appliances. [And they are also required to furnish reasonably skilled and competent men to operate the cars, and the machinery and appliances. Now that is just where the plaintiff claims the company failed in its duty, and it is for you to determine whether or not the defendant company did exercise the proper care under the circumstances.] [2] If it did not, the plaintiff is entitled to a verdict at your hands to an amount that will compensate him for the injuries he received, following the rule that I have given you as to the measure of damages. If the accident could not have been foreseen and guarded against by the defendant company, in other words, if it was unavoidable upon their part, then your verdict must be for the defendant. But if it could reasonably have been foreseen and guarded against, then it was the duty of the defendant company to do so, and if they failed in such duty, then the plaintiff is entitled to a verdict. The proper measure of damages is the loss in his earning capacity, or loss of wages that he has already sustained, or is likely to sustain, if any, in the future, and any cash expenditures which he has incurred, or is likely to incur, and also a proper allowance for the pain and suffering which he has endured, or is likely to endure.

The defendant has asked for certain instructions:

1. The fact that the accident occurred is not in itself proof that the defendant company was guilty of any negligence, and unless the jury find from the evidence that the defendant failed to do something required by ordinary care and prudence, or that it actually did something to cause the accident which an ordinarily careful and prudent person would not have done, then the plaintiff cannot recover in this case and the verdict should be in favor of the defendant. *Answer:* This point is affirmed.

Verdict and judgment for plaintiff for $18,250. Defendant appealed.

*Errors assigned* were (1) inadequacy of charge in failing to instruct the jury that the burden of proving negligence under the circumstances of the case was upon the plaintiff; (2) portion of opinion as above; (3) in failing adequately to correct the statement of the law made by plaintiff's counsel as to the measure of damages; (4) in failing to give to the jury any proper measure of damages in making up their estimate of the loss of earning power of the plaintiff.

*W. P. Potter,* with him *William A. Stone,* for appellant.— Negligence will not be presumed where an injury results from one of the ordinary incidents of travel, but the plaintiff must show it affirmatively as part of his case : Stager v. Pass. Ry. Co., 119 Pa. 70 ; Hayman v. Penna. R. Co., 118 Pa. 508.

A verdict should be set aside where the jury have manifestly capitalized the earning power of the plaintiff, even in the face of instructions of the court to the contrary : Tietz v. Phila. Traction Co., 169 Pa. 525 ; Goodhard v. Penna. R. Co., 177 Pa. 1.

*Rody P. Marshall,* with him *Thomas M. Marshall* and *David S. McCann,* for appellee.—The verdict was not unreasonable : Frame v. Electric Traction Co., 180 Pa. 49 ; Chicago & Eastern Ill. R. R. Co. v. Holland, 18 Ill. App. 422 ; Walker v. Erie Ry. Co., 63 Barb. 260.

OPINION BY MR. JUSTICE MCCOLLUM, October 6, 1899 :

This is a peculiar case and the occurrence on which it is based is a novel one. It is the outcome of a collision imputed

to the negligence of the defendant company. Immediately preceding the collision the company's car was standing on the tracks of the street railway about twenty feet from the lines of railroad operated by the Pennsylvania Company, and facing the same. The safety gates at the crossing were down and a train was passing westward on one of the lines at a moderate rate of speed. As the train was crossing the line of the street railway operated by the defendant company the latter's car started suddenly and rapidly towards the crossing, broke through the first safety gate, and collided with the rear car. The plaintiff at the time of the collision was standing in the rear car of the train, and he alleges that the jar it received by the impact threw him against the radiator or stove in the car, and thus produced the injury which he claims has rendered him practically helpless. The testimony descriptive of his condition and the cause of it appears to sustain his claim respecting his injury, and the effect of it. It is not necessary to add anything further to this phase of the plaintiff's case. Of course, it devolved on him to establish by competent evidence the negligence he imputed to the defendant company, and failing in this, he could not maintain his suit. The question of negligence was not made as clear as it was desirable it should be. The evidence concerning the qualifications and skill of the conductor, the motorman and the dispatcher was not comprehensive or satisfactory. If it was less vague and indefinite on this point it would command more respect and confidence. It is difficult to determine from the evidence whether the starting of the car was caused by improper management of the company's employees in charge of it, or by defects in the machinery not discoverable by them, or, if discoverable, not within their power to remedy or control. That the employees charged with the operation of the car did not intend to start it while the safety gates were down and a train was on the crossing admits of no doubt, and that they exercised their best skill and judgment in the discharge of their duty as they understood it is too clear for argument. The testimony of the employees having charge of the car does not show any direction from the dispatcher to the motorman to turn on the power or to start the car. It will be noticed, however, that a passenger who was once in the service of the defendant company, and who had been discharged from it, testified that he

heard the dispatcher say to the motorman " that the car was all right to cut over his safety," that then he saw the motorman " reach over his head with his right hand, the same as though he was going to cut it in," and that immediately thereafter the car started. He appears to have been the only passenger who heard the remark he imputes to the dispatcher, or saw the movement of the motorman's right hand contemporaneous with the starting of the car. It seems to be conceded that neither the dispatcher nor any other person having knowledge of the machinery and the manner of operating it would have dared to touch the controller with the power on. It follows from this that when the dispatcher turned or handled the controller the power was off.

Further reference to the collision and its consequences or to the evidence affecting the issues involved is not essential to the decision of the question raised by the assignments. The single question presented by them is whether the charge to the jury was sufficient, or inadequate and misleading. It is claimed that the court failed to instruct the jury that the burden of proving negligence under the circumstances was upon the plaintiff, but we think this claim is sufficiently disposed of by the affirmance of the defendant's first point. It is also claimed that the court erred in stating to the jury that it was the duty of the defendant " to furnish reasonably skilled and competent men to operate the cars and the machinery and appliances," and in saying, in immediate connection therewith, " that is just where the plaintiff claims the defendant failed in its duty." In the above quotations from that part of the charge complained of in the second assignment, we discover no substantial ground for complaint or criticism, and certainly the instruction that it was for the jury to determine whether the defendant exercised proper care under the circumstances was unobjectionable.

The instruction relating to the measure of damages was exceedingly brief. It was nothing more than a perfunctory specification of the items constituting the damage claimed as the result of the negligence attributed to the defendant. The items consisted of expenses incurred as a consequence of the injury received, the inconvenience and suffering naturally resulting from it, and the abridgment or loss of earning power, whether temporary or permanent, consequent upon the character of the

injury. No reference to or explanation of the evidence or law applicable to either item was made, and the jury were left without such aid or guidance to a conclusion as they were fairly entitled to. In the recent case of Goodhart v. The Penna. R. Co., 177 Pa. 1, it was held that " the expenses for which a plaintiff may recover must be such as have been actually paid, or such as in the judgment of the jury are reasonably necessary to be incurred. The plaintiff cannot recover for the nursing and attendance of the members of his own household unless they are hired servants." In the same case it was held that " Pain and suffering are not capable of being exactly measured by an equivalent in money and they have no market price. The question in any given case is not what it would cost to hire someone to undergo the measure of pain alleged to have been suffered by the plaintiff, but what under the circumstances should be allowed the plaintiff in addition to the other items of damage to which he is entitled in consideration of suffering necessarily endured. An instruction that leaves the jury to regard pain as an independent item of damage to be compensated by a sum of money that may be regarded as a pecuniary equivalent is not only inexact but it is erroneous." Probably the most important item to be considered in a case like the one now before us relates to the loss of earning power. It is not uncommon for jurors to fall into grievous error in ascertaining compensation for such loss. For instance, they have frequently awarded to the injured party such sum as would yield to him at six per cent during his lifetime an annual income equivalent to his earnings when in full health and vigor. Ordinarily adequate instructions on this point would prevent the error, although they were disregarded in Tietz v. Phila. Tr. Co., 169 Pa. 516. In the case at bar the plaintiff's counsel in their argument to the jury stated that their client, previous to his injury, " had been earning $960 a year, and that this was equivalent to the interest upon the sum of $16,000 at six per cent per annum, and that they, the jury, were at liberty to take this suggestion into consideration in arriving at the measure of compensation due to the plaintiff for his loss of earning power." The learned trial judge did not note this statement in his general charge, and at the conclusion of it the defendant's counsel requested of him " explicit directions to the jury that the measure of dam-

ages set forth in the statement of counsel for the plaintiff was not the correct measure of damages." His only answer to this request was as follows: "The amount stated by the plaintiff's counsel, in his argument to the jury, is not the measure of damages. You will follow, in estimating the damages, the rule I have given to you irrespective of the claim made by counsel for plaintiff." The counsel for the defendant excepted to the answer upon the ground of its inadequacy, and at his instance and request the exception was allowed and the bill sealed for the defendant.

It seems to us that in view of the evidence in the case and the circumstances surrounding it the charge to the jury was inadequate, and especially so in that part of it which related to the plaintiff's loss of earning power. A decision will therefore be rendered accordingly.

Judgment reversed and venire facias de novo awarded.