# Sloan v. James.

*Equity—Injunction—Increased flow of water.*

To entitle plaintiffs to an injunction restraining the increased flow of water in a natural channel, it is incumbent to allege that the increased flow was or threatened to be injurious to their lands.

*Appeal—Harmless error not reversible.*

The appellate court will not reverse for harmless error. Hence, the failure of the court below to find a fact which was admitted by the pleadings and which was practically immaterial whether found or not is not reversible.

*Appeal—Defective assignments—Rule of court.*

Specifications of error which contain more than one point offend against Rule 15 of the Superior Court and will not be considered.

*Equity—Injunction—Costs on defendant when bill dismissed.*

Where the bill prayed relief from the pollution of a stream and it appears that the pollution continued after divers broken promises of amendment up to within a few days of the filing of the bill, the court may impose the costs upon the defendant although dismissing the bill because of the cessation of the nuisance.

Argued Nov. 22, 1889. Appeal, No. 87, Oct. T., 1899, by plaintiffs, in suit of Elizabeth W. Sloan and Caroline S. Weaver against Elwood H. James and Horace E. James, trading as Elwood H. James and Son, and Jacob Reese, George C. Reese, Walter S. Reese and Frank Reese, from decree of C. P. Delaware Co., March T., 1898, No. 86, dismissing bill for an injunction and imposing costs on plaintiffs. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER, W. D. PORTER and BEEBER, JJ. Modified and affirmed. Opinion by W. D. PORTER, J.

Bill in equity for an injunction. Before CLAYTON, P. J.

It appears from the record that this was a bill in equity praying for an injunction to restrain defendants from converting a stream of water running through and along the premises of the complainants, into a common sewer or drain, by discharging into it waters pumped by defendants from an artesian well sunk upon their premises, and used in their slaughter house and ice manufacturing business.

400                    SLOAN v. JAMES.

Opinion of Court below—Assignment of Errors. [13 Pa. Superior Ct.

Other facts appear in the opinion of the court.

The court below found, inter alia, as follows :

[There is no complaint in the body of the bill, of injury from running pure water from said artesian well into the said stream by which its flow has been increased, or because of the temperature of said water it has become unfit for use.

It is a fundamental principle of equity practice that the bill of complaint shall clearly and fully set forth every cause for equitable relief upon which evidence is intended to be offered or upon which the defendants are required to answer.   Upon failure of a bill to set forth all the causes of complaint, evidence cannot be admitted to prove wrongs or injuries not particularly stated in the bill : 1 Dan. Ch. Pr. 377.   No facts are at issue unless charged in the bill, and, of course, no proofs can be offered of facts not so charged, nor can any relief be granted for matters not clearly charged in the bill.   See Brightly on Equity, sec. 551.   We will, therefore, confine ourselves and limit the testimony to the causes of complaint set forth in the bill, which is the pollution of the stream, and not the increase of the flow thereof.] [1]

Defendants submitted among others the following points :

[4. The defendants not being riparian owners, have no lawful right to use the run flowing through the lands of the plaintiffs as a sewer or drain for the waters pumped by them (the defendants), from an artesian well for manufacturing purposes, and under the evidence the defendants should be restrained.] Answer : Refused. [18]

[5. Under the evidence the prayer of the plaintiffs should be granted.  Answer : Refused.] [19]

[The court dismissed the plaintiffs' bill and imposed the costs upon defendants.] [21]

` Errors assigned among others were (1) to a certain finding of the court, reciting same.   (13) In not finding as requested, " the said premises, at the time of the filing of the said bill, and for many years previous thereto, were used as a dairy farm, and occupied by tenants of the complainants."   (15, 16) In not finding as requested : " 7. The sewer was originally constructed for the purpose of carrying from the premises of the said Elwood

H. James & Son all the sewage from their slaughter house and ice manufacturing plant, and was originally used for this purpose. 8. In consequence of this use, the waters of the said run, flowing on and along the premises of the said complainants, and the banks of the stream, from time to time, became polluted and foul by deposits of grease, blood, hair or bristles and the washings of the refuse from the said slaughter house, and ice manufacturing plant to such a degree that the cattle of the tenant upon the farm refused to drink the water, and the tenant was obliged to carry the water for them. 9. Upon complaint said Elwood H. James & Son agreed with complainants to disconnect the drain from the run and to desist from the pollution of the stream, and asked for time to arrange for the laying of a sewer pipe over the lands of one Lafferty, and to discharge into Darby creek, they agreeing to put up a fence upon the premises of the complainants to keep the cattle from the water, and to make the change as soon as possible. 10. By reason of the refusal of Elwood H. James & Son to pay the price demanded by Lafferty for the privilege of laying the drain over his ground, the new sewer was not constructed." (18, 19) In not affirming plaintiffs' fourth and fifth points, reciting points and answers. (21) In imposing costs upon defendants.

*V. Gilpin Robinson,* with him *Henry S. Cattell,* for appellants.—Two questions were raised by the bill:

1. Whether the defendants had the right to pollute the stream.

2. Whether they had the right to put down and maintain á drain pipe, and to thereby artificially discharge the drainage from the slaughter house and ice manufacturing plant into complainants' run of pure water, flowing through their dairy farm.

The rule laid down in Bentz v.·Armstrong, 8 W. & S. 40, that the agricultural rule of drainage as between servient and dominant tenements cannot apply in cities and towns, has never been departed from: McMahon v. Thornton, 5 Pa. Superior Ct. 495; Davidson v. Sanders, 1 Pa. Superior Ct. 432.

When the rules of the civil law prevail the lower or servient tenant must submit to such water as naturally flows upon it, but the authorities generally state that this servitude must not be augmented or made more burdensome by the industry of man: Pfeiffer v. Brown, 165 Pa. 267. See also Angell on

Watercourses, sec. 108, and Wood on Nuisances, secs. 378, 397, 398.

Ownership of land bordering on a stream does not carry with it the right to pollute the stream to the injury of lower riparian owners, by discharging into the stream, or depositing on the land so that it must necessarily flow into the stream, mine water brought from an artificial water way from an entirely different basin.

The continuous pollution of a pure stream of water running through a farm, whereby it is rendered unfit for cattle to drink, especially if it is caused by the introduction of something which will make the water, when overflowing the banks, destructive to pasturage and growing trees, is a substantial injury to the owner of land as well as to the tenant, and the former may maintain a bill in equity.

Putting the costs upon the complainants was certainly adding injury to injury. They were driven to commence this action because the defendants had polluted the stream to such a degree as to make it unfit for use.

*Edward P. Bliss* and *Isaac Johnson,* for appellees.—The court below committed no error in holding that the cause of action was the pollution of the stream and not the increase of its flow: Daniell's Chancery Practice, 377.

There was not a word of testimony to show that the flow of the stream was materially or even perceptibly increased by the water flowing from the premises of the appellees.

An injunction will not be granted to prevent the commission of acts which though unauthorized yet produce no results injurious to the plaintiff: High on Injunctions, sec. 22; Mining Co. v. Water Co., 54 Pa. 164.

In view of the fact that the appellees proceeded promptly to stop the flow of impure water as soon as their attention was called to it, and before the filing of the bill took such action as absolutely prevented any pollution of the stream, the court below committed no error in dismissing the bill and imposing the costs on the appellants.

Where a defendant disclaims the intention of continuing a nuisance and is using due diligence for its removal an injunction will be refused: High on Injunction, sec. 752.

OPINION BY W. D. PORTER, J., April 23, 1900:

This was a bill in equity filed by plaintiffs, alleging that the defendants were discharging large quantities of filthy and polluted water from an artesian well, and offensive matter from a slaughter house into a stream, which, below said point of discharge, flowed through plaintiffs' land, and that, as a consequence, the said stream which before had flowed through plaintiffs' land pure and unpolluted had become and continued to be unwholesome, injurious and unfit for use. The bill prayed for an injunction and for general relief. The court below dismissed the bill and the plaintiffs appealed.

The bill did not allege that the flow of water in the stream was materially increased by the discharge of the water from the artesian well, nor that any injury resulted to the plaintiffs from the increased flow in the stream. No evidence was produced which indicated that the volume of the stream was appreciably increased by the addition of said water from the artesian well, nor that the lands of the plaintiffs were in any manner affected by said increased flow. To entitle the plaintiffs to an injunction restraining the increased flow of water in a natural channel, it was incumbent upon them to allege that the increased flow was or threatened to be injurious to their lands, and to produce evidence establishing said facts: Miller v. Laubach, 47 Pa. 154; Mining Company v. Water Company, 54 Pa. 164. The first, eighteenth and twentieth specifications of error are dismissed.

The specifications of error from the second to the twelfth, inclusive, the fourteenth and seventeenth, complain of findings of fact by the court below. Such findings of fact are only to be reversed in case of clear error, and a careful review of the testimony has failed to satisfy us that there was reversible error in any of said findings of fact, and all of said specifications of error are dismissed.

The thirteenth specification of error complains of the failure of the court to find upon the written request of the plaintiffs, that the lands of the plaintiffs at the time of the filing of the bill, and for many years previously, were used as a dairy farm and occupied by tenants of the complainants. This fact was practically conceded by the answer, and it could have done no harm if the court had found as requested, but neither did the mere

failure of the court to find as requested injure the plaintiffs' case. Under the pleadings and the testimony, the question to be determined was whether the defendants had been and were polluting the stream of water, and if they were not doing so the mere fact that the plaintiffs' premises were used as a dairy farm became immaterial, and the specification of error is dismissed.

The fifteenth and sixteenth specifications of error offend against Rule 15, in that they each embrace more than one point, and specify the failure of the court to find in accordance with two distinct requests for findings of fact upon the part of the defendants, and said specifications are not to be considered.

The court having found the facts against the plaintiffs, it would have been error to grant the prayer of the bill, and the nineteenth specification of error is overruled.

The twenty-first specification of error relates to the imposition of costs upon the defendants, and it is not without merit. Under the evidence produced and impliedly from the findings of facts by the court, it appears that the defendants had been polluting the stream in question by the discharge of refuse matter from their slaughter house. In October, 1897, they had been notified of this fact by the plaintiffs, and had promised to abate the nuisance. They then made some temporary arrangement which they assured plaintiffs would remedy the evil, but it utterly failed to do so. In February, 1898, in response to further notice, the defendants altered the drain by putting in a trap, or device, by which the drainage from the slaughter house could be cut off from the stream, which they then claimed would be sufficient to protect the stream from pollution, but again the device failed of its purpose and the drainage from the slaughter house was permitted to escape into the stream. On the 24th of March, 1898, this bill was filed and the defendants in the eighth paragraph of their answer, practically admit that they had continued to pollute the stream down to March 15, 1898, and the evidence clearly establishes that fact. The court has found that since the 16th of March, 1898, the defendants have not permitted the stream to be polluted, and the evidence shows that on the 15th of March, 1898, such a change was made in the arrangement of the slaughter house as to entirely cut off its drainage from the stream. It thus ap-

pears that the plaintiffs had been suffering from the pollution of the stream and had, from time to time, received the promise of the defendants to remedy the evil, but those promises had not been fulfilled.   At the time the bill was filed the plaintiffs had no reason to believe that the promises then made by the defendants were more to be relied upon than those which had preceded them, and there was, therefore, reasonable grounds for beginning this proceeding.   We are of opinion that the plaintiffs should not be called upon to pay the costs.

Decree affirmed except as to the payment of costs; and it is now ordered, adjudged and decreed that the costs in the court below and upon this appeal be paid by the defendants.