# Commonwealth *v.* Volquarts, Appellant.

*Appeals—Assignments of error—Instructions—Charge.*

An assignment of error relating to the admission of evidence will not be considered, where the evidence is not given in connection with the assignment, nor any reference given as to where it may be found.

A single assignment of error complaining of the action of the court in refusing to affirm two separate and distinct points, is in flat violation of the rules and will not be considered.

An assignment of error to an answer to a point will not be considered where the answer is not set forth in the assignment.

An assignment of error is in proper form which reads: "The charge of the court is inadequate in failing to define to the jury the nature and character of the crime charged in the indictment, and the proofs required for sustaining the same."

*Criminal law—Conspiracy—Evidence—Construction.*

On the trial of an indictment for conspiring to cheat and defraud the prosecutor out of the ownership and possession of certain stock, where there is evidence that the prosecutor recognized the right of the defendants to the stock, settled with them and took their money, it is reversible error for the trial judge to say to the jury that it was not for the jury to consider whether the defendants had a right to retain the stocks, because that was a question for the civil courts.

Argued March 9, 1908. Appeals, Nos. 177 and 178, April T., 1908, by defendants, from judgment of Q. S. Allegheny Co., Oct. T., 1907, No. 439, on verdict of guilty in case of Commonwealth v. Fred Volquarts and W. P. Lemley. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Reversed.

Indictment for conspiracy. Before CARNAHAN, J.

Verdict of guilty, upon which judgment of sentence was passed.

*Errors assigned* were in the following form:

2. The court erred in that part of its charge to the jury which is in the following language, to wit:  ·

The charge is conspiracy, and there is a great deal of difference between the trial of such a case, as respects the disposition of property, in this court, the criminal court, and in a civil court. The question here is not whether they were justified in doing what they did, not whether they were acting within their rights. These are questions for the civil courts to determine. The question with you is, did they falsely and maliciously conspire to cheat this man, knowing that they were doing wrong. That is your question. Now, as to whether they had a right to retain this stock or whether they did not have a right to retain it is not a question for you to consider at all, for that is a question for civil courts. As I say, the crime here consists of having falsely and maliciously conspired together, agreed together, to cheat this man. Now, I call your attention to this difference, because it is a most important factor to consider when you determine this case, and you must recollect that you are not passing upon the question whether they acted within their rights but whether they deliberately and maliciously agreed among themselves to cheat the other man.

3. The court erred in charging on the indictment wherein the corpus delicti was the alleged conspiring to cheat and defraud the prosecutor of certain stock, or the value thereof, in using the following language in respect thereto:

Whether they were justified or not is not the question; but the question is whether they honestly believed they had a right to retain the 2,000 shares or did retain them under that honest belief. That is the question for you. Now, as a matter of fact, Mr. Sulzner, so far as his actions are concerned on that day, acquiesced in their claim. That is, when they tendered him the money for each of those thousand shares of stock, which they claimed they had bought several weeks before, which were not delivered, and which they had a chance now to retain out of those 4,000 shares, he acknowledged that they had him; that, in other words, these boys must have been acting as his agents, and, at any rate, he accepted the money for

those 2,000 shares and gave receipts for them. His explanation of that is that he was so confused and rattled he didn't know what he was doing and he was not responsible for what he did, and from intimations from counsel, it would appear that the commonwealth claims that some undue advantage was taken of him and he should have been given an opportunity to send for counsel to advise.

Now, gentlemen of the jury, of course he could have sent for counsel; he could have taken the position that he would do nothing until he did advise with counsel, and he had a perfect right to send for counsel. There is no evidence that he even suggested sending for counsel. He signed the receipts, accepted the money, and, furthermore, gave an order for the sale of the balance of the 4,000 shares, consisting of 2,000 shares. These facts are admitted. And it is evidenced right on paper that he accepted the money for the 2,000 shares and gave an order for the sale of the 2,000 shares. His explanation is that he was so disgusted and rattled that he didn't know what he was doing. Afterwards, he repudiated the transaction, and, I think, perhaps, tendered this money back (I am not quite certain about it), but it wasn't accepted. Now, gentlemen of the jury, all these matters are to be considered when you come to determine whether these parties falsely and maliciously conspired to cheat. If they did, if they knew they were wrong about it, that it was simply a trumped-up arrangement there to keep this stock, now that they had the opportunity to retain it, they were not acting honestly about it, and they agreed among themselves to do it, not each one acting independently, but agreeing and conspiring among themselves so to do, then they are guilty of a conspiracy as charged.

4. The court erred in failing to charge the jury that if the defendants had a right to retain the stock in question, there could be no conviction.

5. The court erred in refusing the following points of the defendants:

That under all the testimony, there is nothing to disclose that the defendants agreed to conspire, and did conspire, to cheat and defraud Joseph L. Sulzner.

202    COMMONWEALTH *v.* VOLQUARTS, Appellant.

Assignment of Errors—Opinion of the Court. [36 Pa. Superior Ct.

4. That under all the evidence, the verdict should be not guilty.

6. The charge of the court was inadequate in failing to define to the jury the nature and character of the crime charged in the indictment, and the proofs required to sustain the same.

*L. S. Levin* and *Charles A. O'Brien*, for appellants.

*Harvey A. Miller*, with him *H. L. Goehring*, district attorney, for appellee.

OPINION BY MORRISON, J., April 20, 1908:

The defendants were jointly tried under an indictment containing three counts, the first of which charged unlawful conspiracy and confederation to cheat and defraud Joseph F. Sulzner of his goods, moneys, chattels and other property; second, with having falsely and maliciously conspired, combined, confederated and agreed to cheat and defraud the said Joseph F. Sulzner out of the sum of $1,977.50 lawful money; third, with conspiring and confederating to cheat and defraud the said Joseph F. Sulzner out of the ownership and possession of certain stocks, to wit: 4,000 shares of stock of the Gold Bullion Mining & Development Company, a corporation organized and existing under the laws of the state of Arizona. The indictment was drawn under section 128 of the crimes Act of March 31, 1860, P. L. 382 (see p. 413).

It will be noted that the defendants were not charged with an unlawful conspiracy and confederation to accomplish a lawful purpose. Therefore it was of vital importance whether the defendants were seeking to defraud the prosecutor, or to secure the stock which they alleged lawfully belonged to them. The evidence of conspiracy was not strong and we think there is clear error in the charge of the court as raised by the second assignment.

There is considerable evidence that the defendants were trying to get the prosecutor to recognize their title to the stock in question, a part of which each defendant claimed to have purchased of certain persons claiming to be agents of the

owner, the prosecutor. The latter met the defendants on July 16, 1907, and recognized their claims and made a settlement with them and received money from each and signed an order authorizing the sale of the balance of the stock which the prosecutor claimed, and thereafter this prosecution was commenced and carried on till the defendants were convicted and sentenced.

The first assignment of error is in flat violation of the rules of this court and it cannot be considered. It relates to the admission of evidence which is not quoted in connection with the assignment, nor is there any reference to where it may be found.

We regard the language used by the court in the second assignment as clearly erroneous. The learned court said: "The question here is not whether they were justified in doing what they did, nor whether they were acting within their rights. These are questions for the civil courts to determine. The question with you is, did they falsely and maliciously conspire to cheat this man, knowing that they were doing wrong? That is your question. Now, as to whether they had a right to retain this stock or whether they did not have a right to retain it is not a question for you to consider at all, for that is a question for civil courts."

Bearing in mind that the defendants were only indicted for conspiracy and confederation to cheat and defraud, we cannot agree with the learned court that it was not important whether. they had a right to retain the stock. If they had such right, and the jury could have found that question in their favor, because the prosecutor recognized the right and settled with them and took their money, then we fail to see how they could be convicted of an unlawful conspiracy to cheat and defraud the prosecutor. While the portion of the charge quoted in the third assignment may be open to criticism, yet we are not prepared to say it contains reversible error and, therefore, it is not sustained.

The fourth assignment is not in accordance with our rules and it is not sustained. The fifth assignment complains of the court in refusing to affirm two separate and distinct points.

This is in flat violation of the rule and it has been so often decided by the Supreme Court and this court that it seems a waste of time to cite authorities. In Sloan v. James, 13 Pa. Superior Ct. 399, we said: "The fifteenth and sixteenth specifications offend against rule XV., in that they each embrace more than one point, and specify the failure of the court to find in accordance with two distinct requests for findings of fact upon the part of the defendants, and said specifications are not to be considered." In addition to this, the answers of the court to the points quoted in the fifth assignment are not given and we cannot find from the record that the points referred to were presented to the court at all. The charge makes no reference to any points. The appellants' paper-book contains six paragraphs, entitled: "Defendants' Points," signed L. S. Levin, attorney for defendants, but they are not in the form of points presented to the court for instructions, nor does it appear that they were so presented. They seem to be the attorney's criticisms or exceptions prepared after the trial and verdict and we cannot see that they form any part of the record.

The sixth assignment reads: "The charge of the court was inadequate in failing to define to the jury the nature and character of the crime charged in the indictment and the proofs required to sustain the same." We regard the charge, as a whole, inadequate and insufficient, under the evidence in the case, and we are forced to the conclusion that the rights of the defendants were not properly protected. That this assignment is in proper form seems to be sustained by Tietz v. Phila. Traction Co., 169 Pa. 516; Richards v. Willard, 176 Pa. 181.

We have already indicated that, in our opinion, if the defendants purchased a part of the stock in question from agents of the prosecutor, and he recognized the sales and settled with the defendants on July 16, 1907, and received the balances due on the stock sold to the defendants, and signed an order authorizing the defendants to sell the other stock which was under consideration at the time, then the jury ought to have been instructed to acquit the defendants. If the defendants were only seeking to settle a business transaction, and pay for and secure the stock which they had previously purchased,

we cannot see how they could have been convicted of conspiracy to cheat and defraud. But we are not prepared to say that the case was not for a jury under proper instructions.

In Com. v. Spencer, 6 Pa. Superior Ct. 256, we held, quoting Com. v. Gillespie, 7 S. & R. 469, that: "It must be recollected that conspiracy is a matter of inference, deducible from the acts of the parties accused, done in pursuance of an apparent criminal purpose, in common between them, and which rarely are confined to one place, and if the parties are linked in one community of design and of interest, there can be no good reason why both may not be tried where one distinct overt act is committed, for he who procures another to commit a misdemeanor is guilty of the fact, in whatever place it is committed by the procurer."

We sustain the second and sixth assignments, and reverse the judgment with a venire facias de novo.